STATE, RESPONDENT, *v.* GANGNER, APPELLANT.

(No. 5,674.)

(Submitted March 28, 1925. Decided April 18, 1925.)

[235 Pac. 703.]

*Criminal Law—Robbery—New Trial—Newly . Discovered Evidence—Erroneous Denial of Motion.*

Criminal Law—New Trial—Newly Discovered Evidence—Application Entitled to Proper Consideration.
1. Though a motion for a new trial in a criminal cause on the ground of newly discovered evidence is not generally viewed with favor by the courts, it is authorized by the Codes and, when the prescribed conditions are met, entitled to the same consideration as a motion upon any other statutory ground, and while a broad discretion is lodged in the trial court in disposing of it, its order denying it is subject to review.

Same—New Trial—"Cumulative" Evidence—What Does and What Does not Constitute.
2. Evidence which merely multiplies witnesses as to any fact theretofore investigated or only adds other circumstances of the same general character is cumulative within the meaning of the rule which requires that alleged newly discovered evidence must not be merely cumulative in character; but where such evidence brings to light some new and independent fact of a different character, although tending to prove the same ground of· claim before insisted upon, it is not cumulative.

---

1. See 20 R. C. L. 289.
2. What is cumulative evidence within rule excluding in support of motion for new trial, see note in Ann. Cas. 1913D, 856.
Cumulative evidence as ground for new trial in criminal case, see note in 46 L. R. A. (n. s.) 903.
Cumulative evidence as ground for new trial in civil case, see note in L. R. A. 1916C, 1162. See, also, 20 R. C. L. 295–298.

[73 Mont. 187.]

Same—New Trial—Newly Discovered Evidence Held not Cumulative.
3.   Under the above rule, *held* that where defendant, who did not participate in a robbery but was charged with and convicted of advising and encouraging two others to commit the crime, had testified that he did not know anything of its contemplated commission, proffered evidence of one of the two active participants who had pleaded guilty, that defendant was not aware that the robbery had been planned or considered was not cumulative merely and refusal of a new trial was error.

Same—New Trial — Newly Discovered Evidence—Impeaching Evidence—Rule.
4.   That newly discovered evidence is contradictory of other evidence given at the trial is not a reason for denying a new trial on the ground that it is impeaching in character; the rule rejecting impeaching evidence referring to evidence which tends only to impeach the character or credibility of a witness.

Same—State may not Deny Counsel Access to Witness Confined in Jail.
5.   The state, through the sheriff's office, has no right to deny counsel for one accused of crime access to a material witness confined in jail.

Same—New Trial—Newly Discovered Evidence—When State may not Urge Want of Diligence on Part of Movant.
6.   Where prior to defendant's trial for robbery his attorney was denied permission to interrogate a participant in the crime who was confined in jail and who pleaded guilty after defendant had been convicted, the state was not in a position to urge on appeal that defendant had not exercised diligence in procuring the testimony of the witness which was offered as newly discovered on application for a new trial.

Same—New Trial—Newly Discovered Evidence—Different Result Probable on Retrial.
7.   Where conviction of defendant for advising and encouraging a robbery was had on the testimony of the one who actually committed the crime given under promise of immunity, newly discovered evidence offered by a codefendant who had pleaded guilty, to the effect that defendant was ignorant of the contemplated commission of the robbery, *held* sufficient, in view of the circumstances and the character of the testimony upon which conviction was had, to show that probably a different result would be had on a retrial.

---

Criminal Law, 16 C. J., sec. 2053, p. 808, n. 40 New; sec. 2708, p. 1182, n. 88, 90, p. 1183, n. 99; sec. 2720, p. 1194, n. 15; sec. 2728, p. 1202, n. 68, 69; sec. 2729, p. 1202, n. 70; sec. 2730, p. 1208, n. 97.

*Appeal from District Court, Deer Lodge County; Geo. B. Winston, Judge.*

FRED GANGNER was convicted of robbery and appeals from the judgment and the order denying his motion for new trial. Reversed and cause remanded for new trial.

*Mr. John W. James,* for Appellant, submitted an original and a reply brief and argued the cause orally.

Where newly discovered evidence will probably change the result to a verdict more favorable to defendant, a new trial should be granted. (16 Corpus Juris, p. 1208; *People* v. *Heinen,* 300 Ill. 498, 133 N. E. 232; *People* v. *Cotell,* 298 Ill. 207, 131 N. E. 659; *State* v. *Lumpkin,* 31 Idaho, 175, 169 Pac. 939; *State* v. *Fleming,* 17 Idaho, 471, 106 Pac. 305; *Bailey* v. *State,* 36 Neb. 808, 55 N. W. 241–243; *People* v. *Fridy,* 83 Hun, 240; s. c., 31 N. Y. Supp. 399; *State* v. *Matkins,* 45 Mont. 58, 121 Pac. 881.)

Where the probable effect of newly discovered evidence is doubtful or impossible to determine, a new trial should be granted. (*Dennis* v. *State,* 103 Ind. 142, 2 N. E. 349; *State* v. *Keleher,* 74 Kan. 631, 87 Pac. 738.)

Where defendant's conviction was based on the testimony of an alleged accomplice and self-confessed thief, and the case on the facts was doubtful, it was error to deny a new trial on newly discovered evidence supported by a substantial showing. (*McClearly* v. *State,* 97 Miss. 332, 52 South. 796.)

Evidence not known to defendant at his trial which will tend to prove that the crime of which he has been convicted was committed by another person is ground for a new trial. (*People* v. *Kellher* (Cal.), 16 Pac. 705; *Dennis* v. *State,* 103 Ind. 142, 2 N. E. 349.)

*Mr. L. A. Foot,* Attorney General, and *Mr. I. W. Choate* and *Mr. A. H. Angstman,* Assistant Attorneys General, for the State, submitted a brief; *Mr. Choate* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

From the testimony of the prosecuting witness it is made to appear that about 8:15 o'clock on the evening of March 31,

1924, while Joe Couture and Tellis Houll were sitting in Couture's cabin, two men, later identified as Day and Felt, entered the cabin armed with pistols and commanded Couture and Houll to throw up their hands. Couture failed to respond promptly, and Day struck him over the head, knocked him down and beat him into submission, when the two men robbed him of $515.

It appears from the record that on April 19 an information was filed, charging Day, Felt and Gangner with the commission of the crime. Gangner was tried separately, but the jury failed to agree upon a verdict. He was tried again immediately, and the second trial resulted in his conviction. He moved for a new trial on the ground of newly discovered evidence, but the motion was denied and he appealed.

A motion for a new trial on the ground of newly discovered [1] evidence is not generally viewed with favor by the courts, and the reason is apparent. The presumption is that the moving party had one fair opportunity to make full preparation and presentation of his defense, and the smart of defeat and the prospect of immediate punishment offer impelling inducements to him to manufacture a plausible excuse for another chance, or spur him on to diligent activity to secure available evidence which he ought to have had at his trial but did not have. (*State* v. *Matkins,* 45 Mont. 58, 121 Pac. 881; *State* v. *Prouty,* 60 Mont. 310, 199 Pac. 281.) However, newly discovered evidence is made a ground for a motion for a new trial by our Codes (sec. 12048, Rev. Codes), and, when the prescribed conditions are met, a motion upon this ground is entitled to the same consideration as a motion made upon any other statutory ground; and, while a broad discretion is lodged in the trial court in disposing of the motion, a denial of it is not conclusive, but the order is subject to review on appeal (sec. 12107).

In *State* v. *Matkins,* above, this court announced the following rules by which to determine the sufficiency of an appli-

cation for a new trial, predicated on newly discovered evidence, *viz.:* "(1) That the evidence must have come to the knowledge of the applicant since the trial; (2) that it was not through want of diligence that it was not discovered earlier; (3) that it is so material that it would probably produce a different result upon another trial; (4) that it is not cumulative merely; * * * (5) that the application must be supported by the affidavit of the witness whose evidence is alleged to have been newly discovered, or its absence accounted for; and (6) that the evidence must not be such as will only tend to impeach the character or credit of a witness." It was said further: "To some of these there may be, and doubtless are, exceptions. For illustration: The cumulative evidence may be so overwhelmingly convincing as to compel the conclusion that to sustain the verdict would be a gross injustice, or the impeaching evidence may demonstrate perjury in the witnesses upon whose evidence the verdict is founded."

It is safe to say that no two applications present the same, or even closely analogous, fact situations; hence different courts may differ as to whether a given application measures up to the standards set by the rules above.

It is conceded by the state that Gangner did not participate [2, 3] in the robbery itself, and that he was not present when the crime was committed. It is sought to hold him responsible solely upon the ground that he had advised and encouraged Day to commit the crime. The state induced Day to testify against Gangner, and he did so, and it was upon Day's testimony that the conviction was secured. In other words, without Day's testimony the state did not have any substantial evidence of Gangner's guilt—not sufficient evidence to warrant the submission of the case to a jury.

After Gangner was convicted, Felt pleaded guilty to the charge, and after he was removed to the penitentiary he made the affidavit which is relied upon principally to secure for Gangner a new trial. Briefly, Felt's story, as detailed in his

affidavit, is: That Day had ascertained that Couture was accustomed to carry considerable money on his person, and Day and Felt planned to rob him. They did not know just where Couture lived, but did know that he lived not far from Gangner's home, on the highway leading from Anaconda to Philipsburg. They planned to go to Gangner, ostensibly to obtain information concerning a location for a still for the illicit manufacture of intoxicating liquor, but in reality to obtain knowledge of the location of Couture's cabin. In execution of their plans they went to the Gangner home on the afternoon of March 31 and remained there until 6 o'clock or thereabouts, when Gangner took them in his sled to Cable Crossing, where they expected an automobile to meet them and take them back to Anaconda. As the three traveled along the road, Gangner pointed out the Couture cabin when they passed it and advised Day and Felt to maintain friendly relationship with Couture if they would avoid trouble and possible exposure. When they reached Cable Crossing where the sleighing ceased, Gangner turned, started back toward his home and was not seen again by Felt or Day until long after the robbery. Day and Felt then walked down the road toward Anaconda until Gangner was out of sight, when they turned back, went to Couture's cabin and committed the crime as they had planned previously to do. Nothing was said in Gangner's presence concerning the contemplated crime, and, so far as Felt knew, Gangner was not aware that the robbery had been planned or even considered.

It is suggested by the state that this evidence now offered by Felt is merely cumulative—corroborative of Gangner's own testimony. But Gangner testified that he did not know anything of the contemplated robbery, and did not know what transpired after he left Day and Felt at Cable Crossing.

In *Jenkins* v. *Kitsen,* 62 Mont. 515, 205 Pac. 243, this court considered the same objection and said: "There are often various distinct and independent facts going to establish the same ground, on the same issue. Evidence is cumulative which

merely multiplies witnesses to any one or more of these facts before investigated, or only adds other circumstances of the same general character. But that evidence which brings to light some new and independent truth of a different character, although it tends to prove the same proposition or ground of claim before insisted on, is not cumulative within the true meaning of the rule on this subject."

Again, it is contended that this offered evidence is impeach-[4] ing in character, that it contradicts the story told by Day, and for this reason does not furnish a basis for a motion for a new trial; but counsel misconstrue the sixth rule announced in the *Matkins Case* above. It is not an objection to the tendered evidence that it is contradictory of other evidence given at the trial, if it serves another purpose as well. The rule excludes evidence which tends *only* to impeach the character or credibility of another witness.

Finally, it is urged that Gangner did not exercise due [5, 6] diligence to procure Felt's testimony at the trial. While we are satisfied that the objection is without merit, we are satisfied also that the state ought not to be permitted to raise the objection. Felt was in the county jail at Anaconda at the time this case was tried, and Gangner might have secured a subpoena for his attendance; but the state is responsible for the situation which arose which rendered the issuance of a subpoena of no avail. Felt had been charged jointly with Day and Gangner, and, though he had been under arrest for approximately three months, he had not been even arraigned, and was not arraigned until after Gangner was convicted, and then he pleaded guilty. Whether before his arraignment he would have given any testimony is problematical. He could not have been compelled to give any of the testimony he now offers to give, for it would tend to incriminate him; and, if he had refused to testify, the processes of law would have been powerless to afford Gangner any assistance. But if we assume, for the purpose of argument only, that Felt would have waived the immunity ex-

tended to him by the Constitution (Art. III, sec. 18) and on the witness-stand would have told the same story he now offers to tell, still Gangner cannot be charged with a lack of due diligence for failure to have him called as a witness.

In support of the motion for a new trial, there was presented the affidavit of John W. James, attorney for Gangner, to the effect that prior to Gangner's trial he sought an interview with Felt who was confined in the county jail, to obtain, if possible, the facts concerning the robbery, whether Gangner was implicated, and whether Felt would testify. James states that the undersheriff admitted him to Felt's presence, but, before he had more than commenced the interview, Deputy Sheriff Ingalls came abruptly into the room where the interview was being had and demanded of James, "What are you trying to pull off here?" to which James replied that he was interviewing Felt with reference to the robbery. Ingalls then demanded to know whether James was acting as attorney for Felt and whether Felt had sent for James, and, receiving a negative answer to each of these inquiries, then said to James: "You have no business to talk to him," and immediately took Felt back into the jail and locked him up. James states further that he was unable thereafter to secure an interview with Felt until after Gangner's trial and after Felt had been removed to the penitentiary. Although Ingalls made an affidavit in opposition to the motion, he did not deny any statement made by James.

Whatever the popular notion may be, it is neither the duty nor the right of the state, acting through its public officers, to secure the conviction of one of its citizens by any available means, fair or foul. The Constitution guarantees to everyone accused of crime a fair and impartial trial (Art. III, sec. 16), and the state had no more right to deny defendant's counsel access to a witness material to the defense than it would have had to secrete the witness to prevent the defendant using him, or to deny the defendant the right to process to compel the

attendance of a witness, and defendant could not be required to call Felt to the witness-stand without knowing in advance what his testimony would be. Unler these circumstances the state will not be permitted to say that due diligence was not exercised to secure Felt's testimony at the trial.

All other conditions having been met, the only remaining [7] inquiry is: Is the evidence now offered of such character that a different result will probably follow from another trial?

As observed heretofore, the conviction of Gangner rests upon the testimony of Day, who was the leader of the two active participants in the commission of the crime, and the man who beat Couture almost to a state of insensibility. If there be such a thing as gradations in crime as between active participants, then Day was the most culpable. This man, admittedly guilty of an atrocious crime committed in the most brutal manner, furnished the only evidence which connects Gangner with the crime, and he did so in consideration of a promise of absolute immunity. On cross-examination he testified that he had not been confined in jail with other prisoners, that he had not been even arraigned upon the charge against him, but that the county attorney "told me if I would come through with the facts, they would let me off,   *   *   *   would turn me loose. *   *   *   The testimony that I have given in this case is partly on the strength of the promise made to me by the county attorney.   *   *   *   I do not think, as the result of my testifying in this case I will receive any punishment.   *   *   *   The fact that I do not expect to be punished is partly the inducement for my testifying." When asked if he were seeking revenge, Day answered: "It is not revenge; it is an attempt to save myself."

The affidavit of the defendant discloses that on August 2, 1924, Day was discharged from custody.

The affidavit of L. Angevino sets forth that some time before the trial of Gangner, Day said he was promised his liberty if he would testify against Gangner, and said, in such case "he would testify against his mother to get clear himself."

The affidavit of Joe Siefert is to the effect that Day said "he was going to testify against Gangner, and that he was getting out of it." In speaking of his imprisonment prior to the robbery, Day testified: "I was confined in the Silver Bow county jail for tampering with the mails. * * * I do not know how many counts I pleaded guilty to in that case. * * * Whatever I was charged with I pleaded guilty to."

In view of all these circumstances, and particularly in view of the character of the testimony upon which this conviction rests, we think it is reasonably probable that a different result will be reached if Felt's testimony is considered with the other evidence offered by the defendant, and that fairness to the defendant demands that he be given an opportunity to present this additional evidence in his behalf.

For the error in refusing the motion, the judgment and order are reversed, and the cause is remanded to the district court of Deer Lodge county for a new trial.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Galen, Stark and Matthews concur.