582 P.2d 698 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Larry Antone GOETZ, Defendant-Appellant.
No. 76-808.
Colorado Court of Appeals, Division II.
May 11, 1978.
Rehearing Denied June 8, 1978.
Certiorari Denied August 14, 1978.
*700 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Mary J. Mullarkey, Robert C. Lehnert, Asst. Attys. Gen., Denver, for plaintiff-appellee.
Peter H. Ney, P. C., Littleton, Jane Hazen, Denver, for defendant-appellant.
ENOCH, Judge.
Defendant, Larry Antone Goetz, appeals from a conviction of the crime of conspiracy to commit first degree murder. We affirm.
The People's evidence disclosed the following facts. In February 1975, defendant contracted with Peter Schamber to kill Norman Granberry, owner of a Denver nightclub. The purpose of Granberry's elimination was to make it possible for defendant to take control of certain Denver nightclubs. As compensation for his services, Schamber was to receive $500, the exclusive control of one nightclub, and a share of the profits from all but one of the other nightclubs. Schamber first hired an individual named Atwood, and then later another individual named Workman, to kill Granberry. In June 1975, Workman did shoot Granberry. However, Granberry survived, and Schamber and Workman were soon arrested in connection with the incident.
Schamber obtained immunity in return for assisting in the investigation and securing an indictment against defendant. In January 1976, as part of the investigation, Schamber introduced defendant to an undercover officer posing as a "Mafia hit man." Defendant agreed to pay the undercover officer $1,700 for Granberry's death. The authorities arranged for Granberry to leave Denver in order that his disappearance be taken as a sign that Granberry was dead, and that the undercover officer had carried out his mission. After viewing evidence of Granberry's supposed death, defendant paid the undercover officer "expense money." Some, but not all, of the undercover officer's conversations with defendant were taped.
Defendant argues that he knew nothing about either contract on Granberry, that he was being "framed" by Schamber, that he was willing to pay the undercover officer as a favor and personal loan to Schamber, and that the taped conversations were inconclusive because they were manipulated by the undercover officer.
The jury returned a verdict of guilty, and the court entered judgment accordingly. Defendant was sentenced to a term of thirty to forty years in the state penitentiary.

The Indictment
Defendant challenges the sufficiency of the indictment because it failed to specify the manner in which the murder was contemplated, and the identity of the intended victim. We disagree.
Defendant's reliance on United States v. Tomasetta, 429 F.2d 978 (1st Cir.) is misplaced because a conspiracy was not charged in that case. Considerable latitude is allowed in drafting a conspiracy indictment. Cf. People v. Broncucia, Colo., 540 P.2d 1101. The objective crime (here, first degree murder) need not be pleaded with particularity, Helser v. People, 100 Colo. 371, 68 P.2d 543, and the identity of the victim of the conspiracy need not be alleged. People v. Manson, 71 Cal.App.3d 1, 139 Cal.Rptr. 275. This indictment informed defendant of the charge he faced in such a manner that he could prepare a defense, and he would be in a position to plead any judgment entered as a bar to further prosecution for the same offense. Therefore, the indictment is sufficient. See People v. Xericos, 186 Colo. 21, 525 P.2d 415; see also Howe v. People, 178 Colo. 248, 496 P.2d 1040.
Even if this indictment was defective in some manner, defendant has failed to demonstrate any prejudice or surprise, and in the absence of such, he is not entitled to a reversal. See People v. Albo, Colo., 575 P.2d 427 (1978).

Discovery
During discovery, defendant requested of the People copies of all statements Schamber *701 had given to law enforcement officials. The People provided defendant with all such statements given within the time frame of this case. Trial was scheduled to begin on July 12, 1976. On July 9, defendant requested the transcript of a Colorado Bureau of Investigation polygraph interview with Schamber, and asked for a continuance in order to study it. The court ordered the district attorney to produce the transcript, denied defendant's motion for continuance, but ordered the trial date reset for July 14. On July 15, the date when evidence was first presented, it was discovered that Schamber had acted as a CBI informant since May 1974. Based on this information, defendant asked to have all statements given to the CBI by Schamber. The court ordered the CBI file produced, reviewed it, and found only one relevant document, which was then given to defendant. However, he was refused access to the rest of the file. Defendant contends that the court erred in not granting him a continuance, that the court wrongfully withheld the CBI file from him, and that the People withheld information material to his guilt or innocence.
We do not agree with defendant's contentions. First, rulings on a motion for continuance lie within the sound discretion of the trial court, and, absent abuse, such rulings will not be disturbed on review. People v. Billington, Colo., 552 P.2d 500. We find no abuse of that discretion because the court did grant defendant two days to obtain and study the transcript, and the information sought and eventually obtained (the results of a polygraph examination and the CBI report) was neither voluminous nor complex in nature. Second, we have reviewed the file of sealed police reports which the court withheld from defendant, and we agree with the trial court that they have no relevance to the issues presented here. Third, neither the transcript nor the CBI report furnished to defendant contained evidence that was exculpatory or impeaching in nature. See People v. Bloom, Colo., 577 P.2d 288 (1978); see also People v. Roblas, Colo., 568 P.2d 57. Furthermore, defendant failed to demonstrate any prejudice resulting from the delay in delivery of the documents, and absent such, he is not entitled to a reversal of his conviction. Bloom, supra.

Jury Instructions
Defendant raises several contentions regarding the jury instructions. First, he asserts that the court should have instructed the jury to disregard "any references to any polygraph examinations for any purposes whatsoever." We disagree.
During cross-examination of Schamber, defense counsel elicited testimony for the first time in the trial concerning a polygraph examination given to Schamber in September 1975. Defense counsel pursued the issue and asked the witness the purpose behind the test. Defendant later introduced into evidence a letter from the district attorney to Schamber's attorney which set forth the People's three conditions for dismissing the indictment against Schamber. One condition was that Schamber take another polygraph test to verify that he was not the instigator or solicitor of the attempt on Granberry's life. Having injected the evidence of polygraph tests in the trial, defendant was not entitled to an instruction directing the jury to disregard any references to any polygraph test "for any purposes whatsoever." Cf. People v. Shackelford, 182 Colo. 48, 511 P.2d 19. Thus, refusal to give such an instruction was not error.
Defendant next asserts that the court erred in refusing to give his instruction on his theory of the case. Again, we disagree. Defendant's tendered instruction contained material better left for closing argument, Cf. Armijo v. People, 134 Colo. 344, 304 P.2d 633, whereas the court's instruction adequately encompassed his theory of the case. See People v. Moya, 182 Colo. 290, 512 P.2d 1155.
Defendant argues that in the jury instructions the court failed to specify clearly that Norman Granberry was the victim of the charged conspiracy and that this *702 omission constituted plain error because the evidence also disclosed that defendant discussed with the undercover officer the elimination of Granberry's brother, Archie.
The record does not support this allegation, and we find no error, much less a "plain error." The instruction given on defendant's theory of defense clearly identified Norman Granberry as the victim of the conspiracy. Furthermore, the court cautioned the jury on three occasions that the evidence concerning Archie Granberry was introduced only for the purpose of showing scheme, design, or intent to commit the crime charged.

The Jury Verdict
Defendant contends that the verdict was void because the victim of the conspiracy was not identified in the verdict form. He bases his contention on the potential for confusing proof of the transactions concerning the Granberry brothers.
A verdict in a criminal case need not adhere to strict rules of pleading nor be otherwise technical, Yeager v. People, 170 Colo. 405, 462 P.2d 487, and it will not be void for uncertainty if its meaning can be determined by reference to the record. See, e. g., State v. Shumate, 516 S.W.2d 297 (Mo.App.); State v. Polich, 70 Mont. 523, 226 P. 519. A review of the record refutes the possibility of jury confusion. Hence, the jury verdict is not void.

Closing Arguments
Defendant argues that the People's closing remarks tended to confuse the jury as to the intended victim of the conspiracy, imputed CBI actions to defendant as overt acts in furtherance of the conspiracy, and improperly referred to the polygraph examination that Schamber had taken. Defendant failed to object to these statements when they were made, and in the absence of plain error, reversal is not required. People v. Plotner, 188 Colo. 297, 534 P.2d 791. See also People v. Simbolo, 188 Colo. 49, 532 P.2d 962.
Here, counsel's remarks were not inflammatory nor glaringly improper, Simbolo, supra, and the jury presumably followed the court's instruction to disregard them as evidence in the case. Stout v. People, 171 Colo. 142, 464 P.2d 872. We conclude that the minds of an average jury would not have found the People's case significantly less persuasive by the absence of these remarks, and that therefore, there was no plain error. See People v. Aragon, 186 Colo. 91, 525 P.2d 1134.

Sentencing
Defendant contends that the sentence imposed is excessive. We disagree.
The trial court has wide latitude in imposing sentence, Rochon v. People, 134 Colo. 448, 306 P.2d 1080, and its sentence will not be modified unless there has been a clear abuse of discretion. People v. Duran, 188 Colo. 207, 533 P.2d 1116. But, sound reasons must appear in the record to justify the imposition of a sentence of long duration. People v. Strong, Colo., 544 P.2d 966. Factors required to be considered, without maximizing the value of any one of them, are: The nature of the offense, the character of the defendant, his chances for rehabilitation, and the necessity for protecting the public. People v. Duran, supra.
Here, the defendant had two prior felony and several misdemeanor convictions, and he stood convicted of a conspiracy to commit "murder for hire." Under these circumstances, we cannot say as a matter of law that the sentence is excessive.
We have considered defendant's other contentions and find them to be without merit.
The judgment and sentence are affirmed.
BERMAN and VanCISE, JJ., concur.